UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHERRY DUNCAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:18-CV-736 NAB |
| ANDREW M. SAUL[1], Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Sherry Duncan's appeal regarding the denial of supplemental security income ("SSI") under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 8.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**Issue for Review**

Duncan presents one issue for review. She contends that the residual functional capacity ("RFC") determination is not supported by substantial evidence in the record, because the administrative law judge ("ALJ") failed to fully develop the record. The Commissioner asserts

---

[1] At the time this case was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security. Andrew M. Saul became the Commissioner of Social Security on June 4, 2019. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Andrew M. Saul for Nancy A. Berryhill in this matter.

that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).

The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003). "In this substantial-evidence determination, the entire

administrative record is considered but the evidence is not reweighed." *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).

## Discussion

Plaintiff asserts that the ALJ failed to fully develop the record in this case resulting in a residual functional capacity determination that is not supported by substantial evidence and an erroneous finding of no disability.

**ALJ's Duty to Fully Develop the Record**

The ALJ has a duty to fully develop the record. *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006). In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. *See* 20 C.F.R. § 416.919a(b). "There is no bright line test for determining when the [Commissioner] has failed to develop the record. The determination in each case must be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). A claimant for social security disability benefits has the responsibility to provide medical evidence demonstrating the existence of an impairment and its severity during the period of disability and how the impairment affects the claimant's functioning. 20 C.F.R. § 416.912. "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work." *Byes*, 687 F.3d at 916. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Twyford v. Commissioner*, 929 F.3d 512, 517 n. 3 (8th Cir. 2019) (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

The ALJ's duty to develop the record extends even to cases where an attorney represented the claimant at the administrative hearing. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). "The ALJ possesses no interest in denying benefits and must act neutrally in developing the

record." *Snead*, 360 F.3d at 838. The Commissioner and the claimant's attorney both share the goal of ensuring that deserving claimants who apply for benefits receive justice. *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994). The ALJ's duty is not never-ending and an ALJ is not required to disprove every possible impairment. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

In her application for benefits, Duncan indicates that she is unable to work due to degenerative disc disease, several bulging discs, wrist problems, and depression. Her alleged onset date is October 14, 2014, the date of her application for SSI benefits.

**Duncan's Medical Records**

The medical evidence is sparse in this case. In March 2011, Duncan reported mild to moderate lower back pain, which was worsening, persistent, and aggravated by bending and sitting. (Tr. 229-30.) Upon examination, Dr. Jose Remo noted muscle spasms, decreased lumbar mobility, and tenderness. An x-ray showed moderate degenerative disc height loss at L4-L5 and to a lesser extent L5-S1. (Tr. 231.) An MRI of the lumbar spine indicated advanced degenerative disc disease at L4-L5. (Tr. 224, 231.) In April 2011, Duncan visited a pain management specialist and reported lower back pain radiating into her legs, which was constant, severe, and worsening. (Tr. 237-40.) Dr. Todd Bailey noted during her physical examination, pain to palpation over the lower facet joints and no significant change in the lumbar flexion or extension. Dr. Bailey diagnosed lumbosacral spondylosis without myelopathy and prescribed physical therapy and Elavil. He also suggested facet injections, but Duncan indicated she wanted to continue with conservative therapy.

Duncan visited the emergency room twice in May 2014. The first visit involved a fall. (Tr. 294-99.) X-rays of her knee and tibia/fibula were negative and indicated no acute fracture, dislocation, or other bony abnormality. (Tr. 296-97.) During the second visit, Duncan reported

ankle pain, but left without being seen. The next medical record is a physical consultative examination with a social security agency consultant, Dr. Raymond Leung in December 2014. (Tr. 243-48.) Duncan reported low back pain and wrist pain. During examination, Dr. Leung observed that Duncan walked with a moderate limp. Duncan was able to tandem walk, but unable to toe or heel walk. She was able to squat, but her straight leg raising in the seated position was limited to 30 degrees. She exhibited decreased motion in the lumbar and cervical spine and showed difficulty getting up from the examination table. Dr. Leung diagnosed Duncan with history of lumbar bulged disc (decreased range of motion in the cervical and lumbar spine), torn tendon in the right ankle, gait significant for a moderate limp, and wrist pain (some mild difficulties in manipulating a small object with her hands).

Dr. Paul Rexroat, a state agency psychologist performed a psychological evaluation for Duncan on January 12, 2015. (Tr. 251-54.) Dr. Rexroat diagnosed Duncan with depressive disorder due to other medical condition (back problems).

Duncan visited the emergency room again in late January 2015 for congestion. (Tr. 284-89). At that visit, it was noted that she had normal range of motion in all extremities and was non-tender to palpation. In June 2015, Duncan visited Dr. Remo to re-establish care. (Tr. 273-76.) At that time, she noted that she had chronic neck and back pain and had fallen a number of times. Dr. Remo noted that Duncan had voluntary tensing of neck muscles and exhibited tenderness in the cervical and thoraclumbar areas. He diagnosed her with midline low back pain with right sided sciatica and cervicalgia. Duncan next visited Dr. Remo in November 2015. (Tr. 269-72.) Duncan reported neck pain, low back pain, and requested medication refills. Duncan stated that she did not get an MRI, because she did not have insurance and she had not taken her prescribed

Galapentin or Elavil, because she did not want to take daily medication. She only requested a refill of the Flexiril. Dr. Remo observed muscle spasms and tight muscles.

An MRI on January 21, 2016 indicated disc space narrowing and right sided disc and facet disease at C4-C5 with a similar pattern less pronounced at C5-C6. (Tr. 280-81.) On February 4, 2016, Duncan visited Dr. Andrew Youkilis for pain management. (Tr. 259-63.) Duncan complained of chronic neck and back pain. The physical examination of muscles, reflexes, and sensation were normal. Dr. Youkilis noted that her gait and station were steady, there was no limp or ataxia and her tandem gait was normal. Her mood and affect were pained with anxious facial expressions, jerky body movements, and antalgic behaviors with giveway on strength testing. Dr. Youkilis stated that he reviewed the March 2011 MRI, January 2016 MRI, and x-rays from June 2015. Based on his review and examination, Dr. Youkilis opined that there is radiographic evidence of degenerative disc disease of the lumbar spine and spondylosis with neural foraminal stenosis on the right at C4-5 and on the right at C5-6. He further opined that "Sherry does not have convincing evidence of cervical radiculopathy or myelopathy." He noted that she had yet to undergo a course of conservative treatment. Dr. Youkilis recommended that she stop smoking and attend physical therapy. He did not see a clear role for neurosurgical intervention. He diagnosed her with cervical spondylosis.

A February 2016 MRI of Duncan's lumbar spine indicated degenerative disc disease most pronounced at L4-L5 with intervertebral disc space narrowing and desiccation, bulging disc results in lateral recess stenosis more pronounced on the left than the right, foraminal stenosis is also seen more pronounced on the left than the right with possible compression of the left L4 and L5 nerve roots. (Tr. 278-79.)

The last medical record in the administrative record is a visit with Dr. Youkilis on March 6, 2016. (Tr. 256-58.) Duncan reported that her symptoms had not changed and she had sharp pain in the low back without radiation into the legs, numbness and tingling throughout, neck pain, and occipital headaches which radiate to the temples. She continued to smoke and had not started physical therapy. Physical examination revealed normal spine, muscles, reflexes, and sensation. Duncan could heel and toe walk bilaterally. She preferred to lean forward, her tandem gait was normal, but she walked with an antalgic gait. Dr. Youkilis then stated that he reviewed the previous x-rays and MRIs and the February 11, 2016 MRI. He opined that the February 2016 MRI revealed focal degenerative disc disease at L4-5 associated with Modic changes of the endplates and anterior osteophyte formation. He opined that the did not see evidence of lumbar disc herniation or stenosis on the study and there was focal loss of lordosis at the L4-5 level. He again diagnosed Duncan with degenerative disc disease of the lumber spine, cervical spondylosis, and foraminal stenosis of cervical region. Dr. Youkilis again recommended that she stop smoking and proceed with physical therapy for her neck and back problems.

**Analysis**

The ALJ determined that Duncan had the RFC to perform light work with the following limitations (1) occasionally climb ramps and stairs; (2) never climb ladders, ropes, or scaffolds; (3) occasionally balance, stoop, kneel, and crouch, but can never crawl; and (4) avoid unprotected heights and exposure to hazardous machinery. Duncan asserts that substantial evidence does not support the finding that she could do light work and the ALJ should have found she was limited to sedentary work, which would have resulted in a finding of disability under the Medical Vocational Guidelines.

The RFC is a function-by-function assessment of an individual's ability to do sustained work-related physical and mental activities on a regular and continuing basis.[2] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the administrative law judge's ("ALJ") responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). There is no requirement, however, that an RFC finding be supported by a specific medical opinion. *Hensley*, 829 F.3d at 932 (RFC affirmed without medical opinion evidence); *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (same); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same).

Based on the foregoing, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record as a whole. Duncan contends that the ALJ needs additional evidence to develop the record with evidence addressing her functional abilities and assess an RFC that is supported by some medical evidence. Although, the medical record is sparse, there are two consultative examinations in the record, several MRIs and X-rays, and treatment records from two of Duncan's treating physicians, including a neurologist regarding her impairments. The record reflects that despite alleging disabling conditions, Duncan received minimal medical treatment

---

[2] A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

including in the time period since she obtained insurance. The ALJ did not have a duty to seek additional information from her treating physicians, because there were no undeveloped issues, nor was he required to order an additional consultative examination. *KKC ex rel Stoner v. Colvin*, 818 F.3d 364, 372 (8th Cir. 2016). Duncan does not demonstrate how additional records would have affected the ALJ's determination. *Twyford*, 929 F.3d at 517 n. 3.

Next, the ALJ considered that Duncan had not worked since 2008. Duncan testified in detail regarding the requirements of her past relevant work. The ALJ also relied on the vocational expert's testimony regarding the requirements of Duncan's past jobs. Although the ALJ found that Duncan could perform work at the light exertional level, he also found additional restrictions that account for the limitations caused by her back pain, which resulted in a finding that she could not perform her past relevant work.

Finally, the RFC includes all of the information in the administrative record, including information regarding a claimant's activities of daily living. It is well settled law that a claimant need not prove that she is bedridden or completely helpless to be found disabled. *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005). The ALJ must consider, however, "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (citing *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009)). "As is true in many disability cases, there is no doubt that [claimant] is experiencing pain." *Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011). "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Perkins*, 648 F.3d at 900.

The ALJ properly considered Duncan's testimony and function reports in conjunction with the objective medical evidence. Duncan has alleged very disabling symptoms, but the objective medical evidence after her alleged onset date and obtaining insurance indicate that Duncan has not followed the conservative course of treatment recommended by her doctors. The ALJ can properly consider that she did not want to take the medication offered to her multiple times and that she bought a massage chair rather than attend physical therapy. *See* Social Security Ruling 16-3p Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 at *9-10 (Oct. 25, 2017) (the agency considers whether the frequency or extent of the treatment sought by an individual is not comparable to the degree of the individual's subject complaints or if the individual fails to follow prescribed treatment that might improve symptoms, along with reasons why the individual has not complied or sought treatment).

Based on the foregoing, the Court finds that the ALJ did not fail to develop the record.

## Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only enough that a reasonable mind would find it adequate to support the decision, and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently. *Id.* Substantial evidence supports the Commissioner's final decision.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 12.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Andrew M. Saul for Nancy A. Berryhill in the court record of this case.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of September, 2019.